**FILED**
CLERK, U.S. DISTRICT COURT

12/15/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___cd___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>RAJIV SRINIVASAN,<br>  aka "redlightlabs," and<br>MICHAEL TA,<br>  aka "Meeko Ta,"<br>  aka "Lam Ta,"<br><br>          Defendants. | CR  8:22-cr-00183-DOC<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), (b)(1)(A)(viii), (b)(1)(B)(vi), (b)(1)(B)(viii), (b)(1)(C): Distribution of, and Possession with Intent to Distribute, Controlled Substances; 21 U.S.C. § 853: Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about November 15, 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants RAJIV SRINIVASAN, also known as ("aka") "redlightlabs," and MICHAEL

TA, aka "Meeko Ta," aka "Lam Ta," conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally distribute and to possess with intent to distribute the following controlled substances:

1. At least 400 grams of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(vi); and

2. At least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

B. MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

1. Defendant SRINIVASAN would operate the account "redlightlabs" on the dark web to advertise and accept orders for controlled substances.

2. Defendant SRINIVASAN would use the encrypted messaging application "Wickr" to communicate with and sell controlled substances to customers.

3. Defendant SRINIVASAN would receive virtual currency from customers as payment for controlled substances.

4. Defendant SRININVASAN would route virtual currency he had received from drug customers through cryptocurrency exchanges.

5. Defendant SRINIVASAN would communicate with defendant TA regarding the distribution of controlled substances, including

sending information to defendant TA to mail controlled substances to customers who had ordered those drugs from defendant SRINIVASAN.

6. Defendant TA would obtain controlled substances from sources of supply.

7. Defendant TA would mail parcels containing controlled substances to customers who had ordered those drugs from defendant SRINIVASAN.

8. Defendant TA would possess controlled substances in his residence for distribution to customers.

9. Defendant SRINIVASAN would pay defendant TA for distributing controlled substances to customers that had been ordered from defendant SRINIVASAN.

10. Defendants SRINIVASAN and TA would possess digital devices and would maintain a shared electronic document to coordinate the distribution of controlled substances.

C. OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants SRINIVASAN and TA, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

1. On or before February 7, 2022, defendant SRINIVASAN, as vendor "redlightlabs" on the dark web marketplace "Dark0de," advertised for sale a 10-pack of pills resembling M30 oxycodone pills.

2. On February 7, 2022, defendant SRINIVASAN accepted an order for 10 pills resembling M30 oxycodone pills from an individual he

believed to be a drug customer, but who was in fact an undercover law enforcement agent (the "UC").

3.    On February 8, 2022, defendant TA dropped off a parcel containing approximately 10 pills resembling M30 oxycodone pills that weighed approximately 1.111 grams and contained fentanyl at the United States Post Office in Canoga Park, California, for mailing to a customer who had purchased those pills from defendant SRINIVASAN, which, in fact, had been purchased by the UC.

4.    On or before February 16, 2022, defendant SRINIVASAN, as the vendor "redlightlabs" on the dark web, advertised for sale a 100-pack of pills resembling M30 oxycodone pills.

5.    On February 16, 2022, defendant SRINIVASAN accepted an order for 200 pills resembling M30 oxycodone pills from the UC.

6.    On or before February 23, 2022, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 191 pills resembling M30 oxycodone pills that weighed approximately 21.656 grams and contained fentanyl to the UC.

7.    On or before March 4, 2022, defendant SRINIVASAN sent a letter to drug customers directing the customers to contact him on the encrypted communications application "Wickr," or on dark web marketplaces other than "Dark0de."

8.    On March 6, 2022, defendant SRINIVASAN messaged with the UC on Wickr and told the UC he was also available on Tor mail.

9.    On March 8, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 250 pills resembling M30 oxycodone pills to the UC.

10.   On or before March 11, 2022, after receiving .034 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and

4

delivery of a package containing approximately 249 pills resembling M30 oxycodone pills that weighed approximately 27.1 grams and contained fentanyl to the UC.

11.  On March 16, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 500 pills resembling M30 oxycodone pills to the UC.

12.  On or before March 25, 2022, after receiving .065 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 495 pills resembling M30 oxycodone pills that weighed approximately 53.946 grams and contained fentanyl to the UC.

13.  On March 22, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 500 pills resembling M30 oxycodone pills to the UC.

14.  On or before April 7, 2022, after receiving .06 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 495 pills resembling M30 oxycodone pills that weighed approximately 54.3 grams and contained fentanyl to the UC.

15.  On or about April 13 and April 14, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 1,000 pills resembling M30 oxycodone pills to the UC.

16.  On or before April 21, 2022, after receiving .1090131255 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of two packages containing a total of approximately 1,006 pills resembling M30 oxycodone pills that weighed approximately 117.1 grams and contained fentanyl to the UC.

17.   On April 27, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 500 pills resembling M30 oxycodone pills to the UC.

18.   On or before May 9, 2022, after receiving .064 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 487 pills resembling M30 oxycodone pills that weighed approximately 60.2 grams and contained fentanyl to the UC.

19.   Between on or about May 25 and June 1, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 250 pills resembling M30 oxycodone pills to the UC.

20.   On or before June 1, 2022, after receiving .042 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 250 pills resembling M30 oxycodone pills that weighed approximately 27.1 grams and contained fentanyl to the UC.

21.   On June 14, 2022, using coded language in a Wickr conversation, defendant SRINIVASAN agreed to sell 1,000 pills resembling M30 oxycodone pills to the UC.

22.   On or before June 21, 2022, after receiving .2 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of two packages containing a total of approximately 999 pills resembling M30 oxycodone pills that weighed approximately 105.6 grams and contained fentanyl to the UC.

23.   On July 6, 2022, using coded language in a Wickr conversation, defendant SRINIVASAN agreed to sell 1,000 pills resembling M30 oxycodone pills to the UC.

24.   On or before July 15, 2022, after receiving .209 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 495 pills resembling M30 oxycodone pills that weighed approximately 54.4 grams and contained fentanyl to the UC.

25.   On September 7, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 250 pills resembling M30 oxycodone pills to the UC.

26.   On or before September 19, 2022, after receiving .073 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 250 pills resembling M30 oxycodone pills that weighed approximately 27.28 grams and contained fentanyl to the UC.

27.   On October 11, 2022, using coded language in a Wickr conversation, defendant SRINIVASAN agreed to sell 1,000 pills resembling M30 oxycodone pills to the UC.

28.   On or before October 17, 2022, after receiving .21 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of a package containing approximately 490 pills resembling M30 oxycodone pills that weighed approximately 53.4 grams and contained fentanyl to the UC.

29.   On October 31, 2022, in a Wickr conversation, defendant SRINIVASAN agreed to sell 500 pills resembling M30 oxycodone pills to the UC.

30.   On or before November 7, 2022, after receiving .098 Bitcoin from the UC, defendant SRINIVASAN arranged for the mailing and delivery of approximately 502 pills resembling M30 oxycodone pills

that weighed approximately 54.7 grams and contained fentanyl to the UC.

31. On November 8, 2022, using coded language in a Wickr conversation, defendant SRINIVASAN agreed to sell 1,000 pills resembling M30 oxycodone pills which in fact contained fentanyl to the UC.

32. On November 9, 2022, defendant TA dropped off a parcel containing approximately 1,000 pills resembling M30 oxycodone pills that weighed approximately 108.76 grams and contained fentanyl at the United States Post Office in Huntington Beach, California, for mailing to the UC.

33. On November 9, 2022, defendant TA dropped off 30 packages, including a package of approximately 496 pills resembling M30 oxycodone pills that weighed approximately 54.28 grams and contained fentanyl, and a package of approximately 27.9 grams of methamphetamine, at the United States Post Office in Huntington Beach, California, for mailing to customers.

34. On November 15, 2022, in his residence in Westminster, California, defendant TA possessed with the intent to distribute approximately 181.79 grams of fentanyl, approximately 391 grams of methamphetamine, and a digital device containing customer and shipping information relating to drug transactions.

35. On or about November 15, 2022, defendant SRINIVASAN possessed, in his residence, digital devices containing a shared electronic document, to which defendant TA also had access, which detailed approximately 3,800 drug transactions to approximately 1,500 unique customers, totaling approximately 123,188 fentanyl pills, 143,329 grams of methamphetamine, 292 grams of "China white," 296

grams of black tar heroin, and 27 grams of cocaine, which occurred between May 2022 and November 2022.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[ALL DEFENDANTS]

On or about February 8, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants RAJIV SRINIVASAN, also known as ("aka") "redlightlabs," and MICHAEL TA, aka "Meeko Ta," aka "Lam Ta," each aiding and abetting the other, knowingly and intentionally distributed N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about February 23, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about March 11, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about March 25, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 53.9 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about April 7, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 54.3 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

14

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about April 21, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 117.1 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about May 9, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 60.2 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about June 1, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

17

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about June 21, 2022, in Orange County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 105.6 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about July 15, 2022, in Orange County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 54.4 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about September 19, 2022, in Orange County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about October 17, 2022, in Orange County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 53.4 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(b)]

[DEFENDANT SRINIVASAN]

On or about November 7, 2022, in Orange County, within the Central District of California, and elsewhere, defendant RAJIV SRINIVASAN, also known as "redlightlabs," knowingly and intentionally distributed, and willfully caused to be distributed, at least 40 grams, that is, approximately 54.7 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(a)]

[ALL DEFENDANTS]

On or about November 9, 2022, in Orange County, within the Central District of California, and elsewhere, defendants RAJIV SRINIVASAN, also known as ("aka") "redlightlabs," and MICHAEL TA, aka "Meeko Ta," aka "Lam Ta," each aiding and abetting the other, knowingly and intentionally distributed at least 40 grams, that is, approximately 108.76 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT SIXTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT TA]

On or about November 9, 2022, in Orange County, within the Central District of California, and elsewhere, defendant MICHAEL TA, also known as ("aka") "Meeko Ta," aka "Lam Ta," knowingly and intentionally distributed at least 40 grams, that is, approximately 54.28 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT SEVENTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT TA]

On or about November 9, 2022, in Orange County, within the Central District of California, and elsewhere, defendant MICHAEL TA, also known as ("aka") "Meeko Ta," aka "Lam Ta," knowingly and intentionally distributed at least five grams, that is, approximately 27.9 grams, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT TA]

On or about November 15, 2022, in Orange County, within the Central District of California, and elsewhere, defendant MICHAEL TA, also known as ("aka") "Meeko Ta," aka "Lam Ta," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 391 grams, of methamphetamine, a Schedule II controlled substance.

COUNT NINETEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT TA]

On or about November 15, 2022, in Orange County, within the Central District of California, and elsewhere, defendant MICHAEL TA, also known as ("aka") "Meeko Ta," aka "Lam Ta," knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 181.79 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORFEITURE ALLEGATION

[21 U.S.C. § 853]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offenses set forth in any of Counts One through Nineteen of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)   All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

1  value; or (e) has been commingled with other property that cannot be

2  divided without difficulty.

3

4                                           A TRUE BILL

5

6                                           _____/S/_____

7                                           Foreperson

8  E. MARTIN ESTRADA
   United States Attorney

9

10

11  SCOTT M. GARRINGER
    Assistant United States Attorney

12  Chief, Criminal Division

13  SHAWN J. NELSON
    Assistant United States Attorney

14  Chief, International Narcotics,
     Money Laundering, and

15   Racketeering Section

16  CHRISTOPHER C. KENDALL
    Assistant United States Attorney

17  Deputy Chief, International
     Narcotics, Money Laundering, and

18   Racketeering Section

19  GREGG E. MARMARO
    Assistant United States Attorney

20  International Narcotics, Money
     Laundering, and Racketeering

21   Section

22

23

24

25

26

27

28